IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE HOCKENBURY | : <br> : <br> : 3:10-cv-00170-EMK |
| v. | : <br> : |
| WILKES-BARRE HOSPITAL COMPANY, LLC (d.b.a. WILKES-BARRE GENERAL HOSPITAL) | : <br> : <br> : <br> : |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S SUMMARY JUDGMENT MOTION**

Defendant has filed a summary judgment motion (Doc. 18) seeking dismissal of Plaintiff's overtime claims under the federal Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"). According to Defendant, Plaintiff is not entitled to overtime premium pay because he falls within the "learned professional" and "executive" exemptions to the FLSA/PMWA overtime pay mandate. See generally Docs. 18-20. These exemptions both require Defendant to prove that Plaintiff was paid on a "salary basis." See infra at Sections I.B-C.

At the summary judgment stage, "the court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor." Lobello v. Delaware & Hudson Railway Co., 2010 U.S. Dist. LEXIS 51029, *4-5 (M.D. Pa. May 24, 2010) (Kosik, J.). Application of this basic

principle to the factual record demonstrates that Defendant's characterization of Plaintiff as a "salary basis" employee is dubious at best.  See infra at Sections I.D-F.  Thus, summary judgment is improper.

I. **ARGUMENT**

At trial, the Court can conclude that Plaintiff was not paid on a "salary basis"[1] for three ***independent*** reasons:  (i) Plaintiff was an hourly (rather than salaried) employee, see Section I.D infra;  (ii) Defendant's payment scheme does not qualify as a salary basis plan under the Third Circuit's decision in Brock v. The Claridge Hotel and Casino, 846 F.2d 180 (3d Cir. 1988), see Section I.E infra;  and (iii) Defendant's pay-deduction practices invalidate Defendant's assertion that Plaintiff was paid on a salary basis, see Section I.F infra.

  A. **The Summary Judgment Standard.**

Plaintiff adopts this Court's recitation of the summary judgment standard in Lobello, supra, placing special emphasis on the observation that, at the summary judgment stage, "***the court should view the facts in the light most favorable to the***

---

[1]  Defendant's summary judgment papers emphasize that Plaintiff cannot satisfy the various "duty" requirements of the learned professional and executive exemptions.  See Docs. 19-21.  Plaintiff concedes that Defendant is correct as to the learned professional exemption.  Plaintiff's sole objection to Defendant's use of the learned professional exemption is based on his view (discussed herein) that Defendant cannot satisfy the exemption's freestanding salary basis requirement.  Thus, the Court's resolution of the salary basis issue renders unnecessary any detailed assessment of Plaintiff's job duties.  If the Court denies Defendant's request for summary judgment on the salary basis issue, Defendant's summary judgment motion must fail, since *both* the learned professional exemption *and* the executive exemption require that Plaintiff be paid on a salary basis.  See Section I.C infra.  If, on the other hand, the Court grants Defendant's request for summary judgment on the salary basis issue, judgment should be entered against Plaintiff by virtue of the learned professional exemption.

*non-moving party and make all reasonable inferences in that party's favor*," Lobella, 2010 U.S. Dist. LEXIS 51029, at *4-5 (citing Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (emphasis supplied).

### B.  Overtime Exemptions Must Be Narrowly Construed.

"[A]n employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer comes '*plainly and unmistakably*' within the exemption's terms."  Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)) (emphasis in original); see also Pignataro v. Port Authority of New York and New Jersey, 593 F.3d 265, 268 (3d Cir. 2010); Plaunt v. Dolgencorp, Inc., 2010 U.S. Dist. LEXIS 132135, *19-20 (M.D. Pa. Dec. 14, 2010) (Munley, J.).[2]

As the Supreme Court has observed, "[t]o extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people."  A.H. Phillips, 324 U.S. at 493.  Thus, where, as here, an employer moves for summary judgment asserting that an employee is overtime-exempt, "[t]here are *additional considerations* . . . because the FLSA must be construed liberally in favor of employees."  Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008)

---

[2] Accord 29 C.F.R. § 779.101; Citicorp Indus. Credit Corp. v. Brock, 483 U.S. 27, 36 (1987); A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945); Fredrich v. U.S. Computer Serv., 974 F.2d 409, 412 (3d Cir. 1992); Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991); Donovan v. Frezzo Bros., 678 F.2d 1166, 1173 (3d Cir. 1982).

(emphasis supplied); accord In re Cargill Meat Solutions Wage and Hour Litig., 632 F. Supp. 2d 368, 384 (M.D. Pa. 2008) (Nealon, J.).

### C. **General Principles and the Salary Basis Requirement.**

Defendant asserts that Plaintiff is overtime-exempt under the "executive" and "learned professional" exemptions to the FLSA's and PMWA's overtime pay mandate. See 29 U.S.C. § 213(b)(1) (exempting from FLSA overtime coverage workers "employed in a bona fide executive, administrative, or professional capacity"); 43 P.S. §§ 333.105(a)(5) (same under PMWA). Generally speaking, these PMWA exemptions are interpreted in the same manner as their FLSA counterparts. See Mudgett v. Univ. of Pittsburgh Med. Ctr., 2010 U.S. Dist. LEXIS 44266, *7-8 (W.D. Pa. May 6, 2010).

Under both the FLSA and PMWA, employees must be paid on a "salary basis" in order to be covered by either the executive or the learned professional exemption. See 29 C.F.R. § 541.100(a)(1) (FLSA executive); 29 C.F.R. § 541.300(a)(1) (FLSA learned professional); 34 Pa. Code 231.82(6) (PMWA executive); 34 Pa. Code 231.84(5) (PMWA learned professional).

The Department of Labor defines compensation on a salary basis as follows:

> An employee will be considered to be paid on a salary basis within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, ***which amount is not subject to reduction because of variations in the quality or quantity***

> *of the work performed*. Subject to the exceptions provided in paragraph (b) of this section, ***an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked***.

29 C.F.R. §541.602(a) (emphasis supplied). Next, the regulations specifically list permissible deductions from an exempt employee's salary. Only one of the enumerated deductions is relevant to the instant lawsuit:

> Deductions from pay may be made when an exempt employee is absent from work ***for one or more full days*** for personal reasons, other than sickness or disability.

29 C.F.R. §541.602(b)(1) (emphasis supplied).

### D. At Trial, the Court Can Conclude that Plaintiff was Paid on an Hourly Basis.

The most basic reason why Defendant's motion should fail is because the evidence, when construed in Plaintiff's favor, can support a finding that Plaintiff was not "plainly and unmistakably" a salaried employee. In fact, the record contains at least six separate categories of evidence demonstrating that Plaintiff was an hourly (rather than salaried) employee:

First, on six separate occasions between 2004 and 2009, Defendant issued to Plaintiff formal annual compensation memoranda informing Plaintiff that he was paid on an hourly basis. See Plaintiff's Response to Defendants Statement of Undisputed Facts ("Plf. Facts") (Doc. 23) at ¶ 60(a). These memoranda, which

5

were intended to let employees "see exactly what they had been making and what they are making," are unambiguous: Plaintiff was an hourly employee. See id.

Second, Plaintiff's paystubs and pay data unambiguously present Plaintiff's pay on an hourly basis, listing for each pay period all of Plaintiff's hours worked multiplied by his hourly pay rate to arrive at his compensation. See Plf. Facts at ¶¶ 60(b), 60(e). Plaintiff's listed hours and compensation amounts fluctuate greatly from period to period. See id. As such, they are entirely different from the paystubs issued to Defendant's own salaried employees. See id. More significantly, they bear none of the hallmarks of salaried employment. See Brock, 846 F.2d at 184 (finding against salaried employment "is supported by the payroll records, which show that a supervisor's wage can be calculated by multiplying the hourly wage by the number of hours worked"). [3]

Third, on the sole occasion when Plaintiff's actual work and leave hours did not equal at least 80 hours for the pay period, Plaintiff did not receive his purported salary. See Plf. Facts at ¶ 60(c). Instead, he received pay equaling the product of

---

[3] In its brief, Defendant cites to several cases for the proposition that payroll documents listing an employee's work hours are not dispositive of the employee's salaried status. See Doc. 20 at p. 14. In these cases, however, the employer automatically loaded 40 hours per week (or 80 hours every two weeks) into the payroll system and, regardless of how many hours the employee actually worked, the employee's pay data *always* showed 40 (or 80) hours and the fixed compensation amount. In fact, this is how Defendant maintained the payroll data of its own salaried employees. See Plf. Facts at ¶ 60(b). Notably, this method was *not* utilized for Plaintiff. See id. Rather, on Plaintiff's paystubs and payroll data, the hours listed and the compensation received fluctuate greatly depending on Plaintiff's actual work hours during the pay period. See id. at ¶¶ 60(b), 60(e).

his hours multiplied by his hourly pay rate. See id. Such a methodology cannot be squared with Defendant's assertion that Plaintiff received a salary. See 29 C.F.R. §541.602(a) (defining salary as "a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed").

Fourth, Defendant required Plaintiff to obtain his supervisor's approval to leave the workplace prior to the completion of his 8-hour shift and to use accrued vacation time whenever he needed to leave early for the day. See Plf. Facts at ¶ 60(d). Moreover, this requirement is confirmed by an August 2009 paycheck in which Defendant deducted 1.5 hours of vacation time because Plaintiff left prior to the end of his shift. See id. As is discussed more extensively in Section I.F infra, such a practice contradicts the very notion of salaried employment. See also Kinney v. District of Columbia, 994 F.2d 6, 11 (D.C. Cir. 1993) ("Employees paid under a system that subjects them, even theoretically, to docking for absences by the hour lack one of the characteristics explicitly identified in the Department's regulation on salaried pay."); Brock, 846 F.2d at 186 ("If an employer guaranteed an employee a weekly wage, then made deductions from an employee's 'commission' because the employee missed half a day's work, we would have little trouble concluding the deduction improper.").

Fifth, Defendant subjected Plaintiff to detailed timekeeping mandates, and, in fact, Plaintiff maintained his time in a manner that was every bit as detailed as other hourly employees. See Plf. Facts at ¶ 76. Moreover, Plaintiff's "extra time" pay was calculated under the same methodology used to determine the pay owed to other hourly employees. See ¶ 60(g). This is not surprising, since, on a day-to-day basis, Plaintiff worked alongside other hourly employees and spent approximately 90% of his time doing the same work. See id. at ¶ 57. All of these facts contradict Defendant's assertion that Plaintiff was a "salaried" employee. See Kinney, 994 F.2d at 9 ("Payment on salary basis is thought to identify executive, administrative, and professional personnel precisely because it indicates employees who are given discretion in managing their time and their activities and who are not answerable merely for the number of hours worked or number of tasks accomplished.").

Sixth, while many documents confirmed to Plaintiff his status as an hourly employee, Defendant is unaware of any document informing Plaintiff that he was a salaried employee. See Plf. Facts at ¶ 60(f). Thus, it is understandable that Plaintiff considered himself to be an hourly employee. See id. at 60(h). Defendant says Plaintiff is wrong. But, if confusion exists, Defendant has only itself to blame and the uncertainty does not accrue to Defendant's benefit. See Brock, 846 F.2d at 185 ("That many supervisors did not understand the operation of the [salary] guarantee further underscores" the conclusion that the supervisors were not paid on

a salary basis). Defendant, after all, bears the burden of proving that Plaintiff is "plainly and unmistakably" overtime-exempt. See Section I.B supra (citing authority).

In sum, the above evidence provides the Court with a sufficient basis to conclude that Plaintiff was not a salaried employee. For this reason, standing alone, Plaintiff's summary judgment should fail.

### E. Defendant's Purported "Salaried + Hours" Payment Scheme, Even If Utilized, Cannot Satisfy the FLSA's Salary Basis Requirement Under the Third Circuit's Decision in *Brock v. The Claridge Hotel and Casino*, 846 F.2d 180 (3d Cir. 1988).

In Brock v. The Claridge Hotel and Casino, 846 F.2d 180 (3d Cir. 1988), our Court of Appeals held that the FLSA's salary basis requirement was not satisfied by a payment scheme that is virtually identical to the "Salaried + Hours" scheme belatedly concocted by Defendant. Thus, even if Defendant contemporaneously utilized the "Salaried + Hours" scheme (and it did not), it still cannot avoid its overtime pay obligations.

In Brock, an Atlantic City casino paid certain supervisors according to a "Weekly Salary Guarantee" plan under which the supervisors were "guaranteed a weekly salary of $250.00 for any week in which [they] perform[ed] any service." Brock, 846 F.2d at 182. In addition, the supervisors "were paid by the hour, according to the number of hours [they] worked." Id. The supervisors almost

9

always worked sufficient hours to exceed their guaranteed salary. See id. at 184-85.

The Brock District Court saw through the casino's "Weekly Salary Guarantee" plan as an obvious ruse to escape its obligation to pay overtime to hourly employees:

> The issue squarely before us is whether Boxpersons, Floorpersons, and Pit Bosses of the Claridge Hotel and Casino are compensated on a salary basis, or on some other basis, namely an hourly basis. Just as dressing a mannequin up in a skirt and blouse does not transform it into a woman, so too masquerading an hourly employee's compensation as a guaranteed salary plus hour-based bonuses does not transfer the compensation scheme into a salary-based plan. We conclude that despite defendant's designation of the supervisory employees' compensation in terms of X amount per 8 hour day, it is nothing more than an hourly wage. Further, the $ 250.00 Weekly Salary Guarantee is nothing more than an illusion. Boxpersons, Floorpersons, and Pit Bosses are not compensated on a salaried basis.

Brock v. The Claridge Hotel and Casino, 664 F. Supp. 899, 904 (D.N.J. 1986).

On appeal, the Third Circuit was equally unimpressed by the casino's "Weekly Salary Guarantee." The Court's detailed reasoning is worth repeating:

> From the record, it is plain that the district court's finding that the supervisors' wages were actually calculated on an hourly basis is not clearly erroneous. That fact is supported by the payroll records, which show that a supervisor's wage can be calculated by multiplying an hourly wage by the number of hours worked. The underlying issue in this case is whether an otherwise hourly wage can be transformed into payment on a salary basis within the meaning of the

10

> regulations by virtue of the guaranteed minimum weekly payment. We hold that, in these circumstances, it cannot.
>
> Claridge claims that this minimum was a salary under 541.118(b),[4] and that all wages above that level were "additional compensation." The concept is fundamentally incoherent. Salary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task. In other words, the salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it. With regards to hourly employees, it is the employer who decides the worth of a particular task, when he determines the amount to pay the employee performing it. Paying an employee by the hour affords that employee little of the latitude the salary requirement recognizes. Thus, a basic tension exists between the purpose behind a salary requirement and any form of hourly compensation.

Brock, 846 F.2d at 184. Later in its opinion, the Court further explained why the casino's "Weekly Salary Guarantee" conflicted with the very nature of overtime-exempt employment:

> The "additional" compensation claimed by Claridge . . . varies with the number of hours worked. If an incentive at all, it does not encourage the supervisor to make better use of his time, but only to work more hours. Such encouragement is inconsistent both with salary payment and executive employment. Where, as here, the employee's usual weekly income far exceeds the "salary" guarantee, the guarantee can have no impact on the employee's performance or his status.

Id. at 185; accord Kinney, 994 F.2d at 11.

Here, as in Brock, Plaintiff's supposedly guaranteed "salary" was an illusion. As revealed by Defendant's own payroll register data, Plaintiff ***never***

---

[4] Former 29 C.F.R. § 541.118 currently is codified at 29 C.F.R. § 541.602.

11

actually received the supposed salary because he always worked in excess of 80 hours per pay period, see Exhibits 7, 10, and, on the one occasion when 80 hours was not reached, Plaintiff did not receive his full salary, see Plf. Facts at ¶ 60(c). Just like Brock's casino employees, Plaintiff's compensation always equaled the product of his hourly wage multiplied by his hours worked.  Due to the reality of Plaintiff's long work hours, any "guaranteed" or "fixed" salary was meaningless because it always was swallowed up by Plaintiff's extra hours.

      Weighing the evidence in Plaintiff's favor, the background of this lawsuit is clear:  In 2004, Defendant decided to save money by reclassifying Plaintiff (who previously received time-and-one-half overtime pay) as overtime-exempt. Notably, Plaintiff's job duties and responsibilities did not change upon the reclassification; Plaintiff continued to perform the same job duties both before and after the 2004 reclassification.  See Plf. Facts at ¶ 72.  In particular, Plaintiff continued to spend over 90% of his time working alongside the other hourly employees and performing the exact same tasks as them.  See id. at ¶ 57.[5]  In addition, Plaintiff was required to maintain detailed time records, just like the other hourly employees.  See id. at ¶ 76.  He still needed to get his supervisor's permission to leave early, see id. at ¶ 60(d), and he still had his pay docked if he did not work a full shift or workweek, see id. at ¶¶ 60(c), 60(d).  But there was one

---

[5]  Defendant's attempts to make Plaintiff seem like a high-level supervisor are generally overstated.  See, e.g., Plf. Facts at ¶¶ 25, 27, 28, 29, 30, 31, 32, 33, 34, 35, 45, 46, 51, 52.

big difference after the 2004 reclassification: Plaintiff would no longer get time-and-one-half overtime pay. Thus, for the next five years, Plaintiff (unlike his co-workers) would work insanely long hours for straight-time pay. See Exhibits 7, 10. This scheme (requiring the sole "exempt" employee to work all the overtime hours) saved Defendant a lot of money, since the time-and-one-half overtime pay rates of Plaintiff's co-workers were significantly greater than Plaintiff's own straight-time pay rate. See Plf. Facts at ¶¶ 61, 64. Moreover, the "guaranteed" or "fixed" salary (even if it existed) was meaningless since (i) Plaintiff would always surpass the salary due to his long hours, see Exhibits 7, 10, and (ii) Plaintiff's pay (or leave time) would be docked if he did not work his minimum hours, see Plf. Facts at ¶¶ 60(c), 60(d).

If Brock stands for anything, it is that employers cannot game the system by utilizing "guaranteed salary" schemes like the one put forth by Defendant. Summary judgment should be denied.

### F. Defendant's Pay-Deduction Practices Invalidate Defendant's Assertion That Plaintiff Was Paid On A Salary Basis.

As already observed, the salaries of exempt employees may be deducted when the "exempt employee is absent from work *for one or more full days* for personal reasons, other than sickness or disability." 29 C.F.R. §541.602(b)(1) (emphasis supplied). The exemption is lost, where the employer makes improper deductions for absences of less than one day. See, e.g., Auer v. Robbins, 519 U.S.

452 (1997); Bowman v. City of Indianapolis, 133 F.3d 513 (7th Cir. 1998); Kinney, supra; Oral v. Aydin Corp., 2001 U.S. Dist. LEXIS 20625 (E.D. Pa. Oct. 31, 2001); see also Ellen C. Kearns, The Fair Labor Standards Act (2d Ed. 2010) at 4-46 ("When an employer deducts from the wages of an employee for partial-day absences taken for personal reasons or illness, the employee cannot be considered exempt.").

Under the above principles, Plaintiff, based on the evidentiary record, can establish at trial that he is not overtime-exempt for three separate reasons. First, Defendant maintained a general policy, which was communicated to Plaintiff, requiring that Plaintiff use accrued vacation time whenever he needed to leave early for the day. See Plf. Facts at ¶ 60(d). Second, Defendant did, in fact, dock Plaintiff's pay for an absence of less than one day.[6] See id. Third, Defendant *admits* that it maintains a policy whereby salaried employees are instructed that their pay will be docked if they are absent for over four hours during a single workday. See Def. Stmt. (Doc. 19) at ¶ 42; Def. Ex. J; see also Plf. Facts at ¶ 42. This admitted policy (which Defendant has circulated throughout the workplace) is facially illegal.

---

[6] Defendant presumably attempts to cure this illegal deduction by having its lawyer send the undersigned a check a few weeks before Defendant filed its summary judgment motion and over a year after Plaintiff's employment was terminated. See Def. Ex. U. This tactic is more amusing than legally significant.

In sum, Defendant's pay deduction policies (under any of the three scenarios listed above) provides another reason for denying Defendant's summary judgment motion.

## II.     CONCLUSION

For the reasons described herein, Defendant's summary judgment motion should be denied.

Date:  December 24, 2010                                            Respectfully,

/s/ Peter Winebrake
Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
THE WINEBRAKE LAW FIRM, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Phone:  (215) 884-2491
**pwinebrake@winebrakelaw.com**